IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **JUNE PRIOR AVANCE, ET AL.** § | | |
| Plaintiffs § | | |
| § | | |
| V. § | No.  5:04CV209 | |
| § | | |
| **KERR-MCGEE CHEMICAL LLC** § | | |
| Defendant § | | |

## ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges, KMC's Motion to Strike New and Untimely Affidavits of Frank H. Gardner, J. Routt Reigart, Tumulesh K. Solanky, and Paul H. Templet (Docket Entry # 771) was referred to the Honorable Caroline M. Craven for the purposes of hearing and determining said motion.  The Court, having reviewed the relevant briefing, finds the motion should be **GRANTED**.

### I.  BACKGROUND

June Pryor Avance and numerous other plaintiffs ("Plaintiffs") filed this lawsuit against Kerr-McGee Chemical LLC ("Defendant"), seeking damages caused by their alleged exposure from 1960 to 2004 to Defendant's creosote and pentachlorophenol.

### II.  DEFENDANTS' MOTION TO STRIKE

Defendant filed its current motion to strike, asserting Plaintiffs have attempted to circumvent the Federal Rules of Civil Procedure and this Court's scheduling order by submitting new affidavits/reports which add to, change, and "revamp" expert testimony after the expert report deadline, after the expert discovery deadline, after dispositive motions have been filed, and less than

1

one week before the *Daubert* hearings. Defendant asserts allowing these affidavits is not harmless and would prejudice Defendant. According to Defendant, responding to the new contentions of Plaintiffs' experts both in this motion and (if allowed) in future proceedings and filings, disrupts Defendant's preparation for the *Daubert* hearings, the trial of this case, and increases its costs of litigation. Defendant contends these factors alone are sufficient to justify disallowing the affidavits under Federal Rules of Civil Procedure 16 and 37.

In response, Plaintiffs assert their experts have the right to address the alleged shortcomings in their testimony. Plaintiffs state they are not filing "wholly new reports" nor do their experts' affidavits "revise prior expert conclusions, proffer new opinions and conclusions, rely on new sources and bases, and proffer new methods of analysis. . . ." Rather, according to Plaintiffs, almost all of the information in the affidavits address Defendant's erroneous arguments or are summaries of Plaintiffs' experts' previous testimony, which information is tied together in one place to assist the Court in deciding the *Daubert* motions.

### III. THE PERTINENT AFFIDAVITS

A.      **Procedural Background**

Federal Rule of Civil Procedure 16(b) authorizes federal courts to control and expedite the discovery process through a scheduling order. "Consistent with the authority vested in the trial court by rule 16, our court gives the trial court broad discretion to preserve the integrity and the purpose of the pretrial order." *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 380 (5th Cir. 1996).

On June 12, 2006, the Court entered an Order scheduling the *Daubert* hearings for July 27 and 28, 2006. On June 28, 2006, Defendant filed a Request for *Daubert* Hearing Schedule and Order of Presentation claiming, among other things, that little expert testimony was needed because the

expert "record before the Court is already complete." Plaintiffs opposed Defendant's motion and asked the Court to permit their experts to testify live or by affidavit.

On July 5, 2006, the Court issued an Order setting forth the schedule for the *Daubert* hearing, which provided as follows:

> While the parties are encouraged not to have their experts testify live at the July 27 and 28 hearings, the parties may call their experts live to testify at the hearings or may utilize their time for oral arguments…Each side shall confirm to the other side, on or before July 14, 2006, which witnesses, if any, it anticipates calling to testify live at the hearings.

(Docket Entry # 729).

Because the July 5 Order did not address Plaintiffs' request for affidavits in lieu of live testimony, Plaintiffs telephoned the Court on July 6, asking whether the parties could submit an expert's testimony by affidavit. The Court advised Plaintiffs' counsel to contact Defendant's counsel about working out the issue of submitting affidavits, and if the parties could not reach an agreement, the Court would address the matter. Plaintiffs sent Defendant's counsel an email on July 7, 2006, proposing a schedule for submitting affidavits.

Defendant objected to either side filing new affidavits or reports in an effort to change the record. *See* Defendant's Exh. A, Correspondence from Jennifer Doan to Judge Craven dated July 13, 2006. On July 14 2006, Plaintiffs advised Defendant that Drs. Templet, Reigart, Solanky, and Gardner would testify by affidavit, and Plaintiffs filed with the Court on July 21, 2006, affidavits of Frank H. Gardner, M.D., J. Routt Reigart, M.D., FAAP, Tumulesh K. S. Solanky, Ph.D, and Dr. Paul H. Templet, in lieu of live testimony at the *Daubert* hearing.

**B.  Defendant's Specific Assertions**

Defendant objects to these new reports, asserting they are not permitted under Federal Rule

3

of Civil Procedure 26 and federal case law because they, among other things, improperly attempt to recreate the record before the Court, introduce additional opinions, and change opinions to their submitted expert reports. Specifically, Defendants assert as follows.

**1.      Affidavit of Tumulesh K. S. Solanky, Ph.D.**

Plaintiffs have submitted a revised affidavit of Dr. Solanky that attempts to revise his calculations, proffer new calculations with different target diseases and different conclusions, rely on new sources, and proffer new methods of calculation. Dr. Solanky attempts to opine for the first time about probabilities for the occurrences of all 12 alleged cancers/diseases combined within the half-mile radius. July 21, 2006 Solanky Affidavit ¶ 53, Table 1. Such calculations have not been conducted or raised by Dr. Solanky in any of his expert reports or in his deposition. Also, in his first revamped affidavit attached to the briefing on the parties' motions to exclude Solanky and Poole,[1] which Defendant also moved to strike as untimely and impermissible, Dr. Solanky provided the probability of occurrence on five target cancers/diseases as opposed to the six target diseases he focused on in his expert report. Exhibit D, ¶ 35. Dr. Solanky recreates this five target cancer/disease probability in the newly submitted affidavit, but inextricably comes to a different conclusion. (p value on April 24, 2006 was 0.000000732, and the p value on July 21, 2006 is now 0.000005). *Id.*; July 21, 2006, Solanky Affidavit ¶ 49. In addition, several of Dr. Solanky's probability conclusions have simply changed, with no explanation or basis. For example, the conclusions regarding lung cancer do not match any of his prior lung cancer probability conclusions. July 21, 2006, Solanky Affidavit ¶ 45.

---

[1] Defendant hired Dr. Charles Poole, an epidemiologist, who issued a report criticizing Solanky's report.

Further, Dr. Solanky for the first time purports to rely on the "Fisher's Method" for determining statistical meta analysis, which he claims is known to be conservative. *Id.* at ¶¶ 50-52. This is the first time anywhere Dr. Solanky has purported to rely on this method. He also purports to rely for the first time on the Texas Department of Health, Cancer Registry Division for the Texas incidence of breast cancers in 2000. *Id.* at ¶ 16. This reference has never been cited by Dr. Solanky before, in his report or elsewhere. Finally, to determine the number of birth defects, Dr. Solanky relies on new sources not cited in his expert report, namely medical records, sworn answers to discovery requests and health surveys filled out by the Plaintiffs. *Id.* at ¶ 11. Therefore, he not only attempts to inextricably change his probability conclusions, but bases his entire testimony on a new method for statistical analysis, new sources, and new studies. None of these new contentions were raised by Dr. Solanky in his prior two expert reports, they were not subject to cross-examination in his deposition, and because he is not appearing live at the *Daubert* hearing, cannot be examined about this new information.

**2.      Affidavit of Paul H. Templet, Ph.D.**

Similarly, Dr. Templet provides new sources and justifications for his opinions, as well as wholly new opinions regarding individual plaintiff's alleged exposure pathways. Dr. Templet relies for the first time on the deposition testimony of various individuals to establish or provide new justification for alleged exposure pathways. For example, he relies for the first time on the following depositions and the following contentions:

> James Quinton Mills for the proposition that 'two or three thousands of gallons [of] creosote [were] released at night into ditches of the Black Forest…,' that flooding occurred 'from 1956 to 1982 three or four times,' and 'an ungodly amount of creosote that was-just had the ground saturated.' Templet Affidavit, ¶¶ 51-52, 84 (Dkt. #755).

Nicholas Bock 'that there was contamination beneath the Black Forest of 15 to 20 feet below the surface of the ground.' *Id.* at ¶ 85.

Mark Heald for the proposition that he would 'drain waste water to the ditches.' *Id.* at ¶ 90.

Peter Gaskin for several propositions, including contamination of the 'Black Forest,' the 'basketball court,' that creosote sludge was spread on the ground and buried on the site, spills of creosote occurred, and flooding caused contamination. *Id.* at ¶¶ 91-92. Dr. Templet also now relies on Mr. Gaskin for justification for both old and new exposure pathways of 'anybody that recreates in that area, eats fish out of Days Creek or Howards Creek or eats berries or gets mud on them from four-wheeling or motorcycling, they would be exposed to dangerous levels of creosote…' *Id.*

Ms. Markle for flooding that 'frequently occurred,' with flood levels 'up to people's necks.' Templet Affidavit, ¶¶ 94.

James and Peggy Veal for justification for old and new exposure pathways, including new reliance on contentions that they 'rode dirt bikes on the banks and through Days Creek and in Waggoner's Creek,' 'smelled odors from the plant,' 'fished in the creeks,' and when Mrs. Veal was pregnant that she 'ate perch once a month from the creek, and also had a garden and ate out of the garden.' *Id.* at ¶ 44-48.

In his expert report Dr. Templet relied on statements of James Adams for the general proposition that air and dust were potential exposure pathways. Defendant's Exh. F, pg. 5. Now Dr. Templet relies for the first time on Mr. Adams' deposition testimony that he 'operated a four-wheeler in the creek near the plant and got burned by creosote.' Templet Affidavit, ¶ 49.

Similarly, Dr. Templet relies for the first time on the deposition testimony and the Answers to Interrogatories of June Avance to justify both old and new exposure pathways, including 'walking in the creeks,' 'fishing in the creeks,' 'eating fish,' 'walking near the area of the KMC plant,' 'eating various vegetables,' and 'from dust blowing from the KMC facility.' *Id.* at ¶ 53.

In addition, Dr. Templet relies on the untimely submitted affidavits of Jim Baldwin and Calvin "Smokey" Stevens. Templet Affidavit, ¶¶ 50, 85-88. Defendant moved to strike these witnesses for Plaintiffs' failure to disclose them before the fact discovery deadline. On November 21, 2006, the Court denied Defendant's motion to strike Baldwin and Stevens, allowing them to

testify for purposes of impeachment.

Further, Dr. Templet proffers new observations, including "When I walked the plant site I observed a lot of driftwood way up the bank of Howard's Creek, clearly indicating prior flooding," (*Id.* at ¶ 35), and new conclusions that "Minor changes in elevation are unimportant when the water gets extremely deep. . . ." (*Id.* at ¶ 37). None of these observations or conclusions were timely disclosed in Dr. Templet's report or tested under cross-examination.

3.      **Affidavit of Frank H. Gardner, M.D.**

In his affidavit, Dr. Frank H. Gardner cites a myriad of sources for which he relies on for the first time, or for which he expressly disavowed any reliance on in his deposition. In addition, he supplies new opinions on how certain confounding factors (Hormone Replacement Therapy, "HRT") are supposedly not causative in this case. In particular, he relies on various sources for the very first time. These studies and resources (i) were never disclosed by Dr. Gardner in his expert report, (ii) were never disclosed in his deposition, (iii) were cited for the first time in his first untimely affidavit filed on June 28, 2006, and (iv) were expressly disavowed as a resource in his deposition. Further, Dr. Gardner opines that there is not a statistically significant link between Hormone Replacement Therapy and breast cancer. This opinion was not disclosed in his expert report or in his deposition, but appeared for the first time in his June 28, 2006, affidavit, which KMC also moved to strike as untimely.

4.      **Affidavit of J. Routt Reigart, M.D., FAAP**

In his newly-submitted affidavit, Dr. Reigart also cites never before disclosed sources and purports to rely on those sources to support his opinions. Dr. Reigart did not timely disclose his reliance on these references or sources pursuant to the Federal Rules of Evidence and this Court's

scheduling order.

**C.    Plaintiffs' Specific Assertions**

Plaintiffs explain they filed affidavits in lieu of live testimony for the following two reasons. First, they wanted their experts to support their opinions and address the alleged shortcomings in those opinions. Second, Plaintiffs wanted to promote judicial economy and avoid unnecessary expenses by having them present at the *Daubert* hearings to testify live. Plaintiffs assert the *Daubert* affidavits are not "wholly new reports."

For example, Defendant contends Dr. Solanky "purports to rely for the first time on the Texas Department of Health, Cancer Registry Division for Texas incidence of breast cancer in 2000." However, as pointed out by Plaintiffs, Table 2 on page 6 of Dr. Solanky's Expert Report states, "Breast Cancer in year 2000 (Texas Incidence Rate)." Further, Defendant asserts "Dr. Solanky for the first time purports to rely on the "Fisher's Method" for determining statistical meta analysis, which he claims is known to be conservative. This is the first time anywhere Dr. Solanky has purported to rely on this method." However, Plaintiffs state Fisher's Method is simply a statistical term-of-art for combining P values, which is what Dr. Solanky did in his expert report.

Regarding Dr. Templet's affidavit, Plaintiffs explain that although Dr. Templet does refer to evidence in the record (almost entirely deposition testimony) that he did not cite in his expert report, (1) an expert may base his or her opinion on evidence that is already in the record, and (2) Dr. Templet is not changing any of his previous opinions or offering any new opinions. Rather, according to Plaintiffs, he is citing additional evidence in support of his existing opinions.

Turning to Dr. Gardner, Plaintiffs take issue with Defendant's assertion that Dr. Gardner relied on 13 authorities "for the very first time." For example, according to Plaintiffs, Dr. Gardner

8

cited Sigvard Karlehagen, et al., *Cancer Incidence Among Creosote Exposed Workers,* SCAND J WORK ENVIRON HEALTH 18:26-29 (1992), on page 13 of his Expert Report.  Plaintiffs state the S.A. Henry, *Cutaneous Cancer in Industry* Case Study, was attached to Dr. Gardner's deposition as Exhibit 55, and the Henry Case Study cites the O'Donovan-1920 Case Study.  In addition, Plaintiff asserts Dr. Farber cited all these case studies (Henry, O'Donovan, MacKenzie, and Lenson) at pages 77 through 78 of his Creosote Report, and it is undisputed that Dr. Gardner reviewed Dr. Farber's reports.  Finally, Plaintiffs state his *Daubert* Affidavit is not the first place Dr. Gardner raised his opinion that there is no statistically significant link between HRT and breast cancer. Rather, he first discussed it in his Affidavit, which was attached to the breast cancer plaintiffs' sur-reply briefs.

Finally, Plaintiffs address Defendant's motion to strike Dr. Reigart's affidavit, asserting Defendant's argument clearly ignores ¶11 of Dr. Reigart's *Daubert* Affidavit where Dr. Reigart stated, I also personally reviewed **or reviewed Dr. Farber's summary** . . . of the following literature . . . ."  According to Plaintiffs, all the ATSDR and WHO profiles listed on page 8 of Defendant's brief are cited on pages 87 and 88 of Dr. Farber's Pentachlorophenol Report. Plaintiffs assert the last two authorities on page 8 of KMC's brief and the first cited on 9 of the brief are merely additional support for propositions Dr. Reigart made in his expert report and deposition.  Plaintiffs also state it is undisputed that Dr. Reigart reviewed Dr. Farber's reports.

In its reply, Defendant stresses it is only objecting to the affidavits to the extent they contain new materials, information, or opinions and points out several areas where the original reports and the affidavits differ. Defendant asserts the introduction of new expert affidavits containing new information is unfair and prejudicial to Defendant because Defendant cannot cross-examine an affidavit.

9

## IV.  DISCUSSION

Federal Rule of Civil Procedure 26(a)(2)(B) requires all parties to designate witnesses and submit written reports drafted by the experts. "The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions. . . ." FED. R. CIV. P. 26(a)(2)(B). An expert's report must be "detailed and complete" in order to "avoid the disclosure of sketchy and vague expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 571 (5th Cir. 1996). Rule 26(a) clearly requires that the initial disclosure be complete and detailed. *Sierra Club, Lone Star Chapter,* 73 F.3d at 569.

Federal Rule of Civil Procedure 26(a)(2)(C) requires that expert testimony that is intended to contradict or rebut evidence identified by another party must be done within thirty days after disclosure by the other party. The rule also contemplates supplementation of testimony from an expert under Rule 26(e)(1).

Rule 37(c)(1) provides a "party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 26(c)(1). To avoid sanctions, the party who is alleged to have failed to comply with Rules 16 and 26 bears the burden to show that its actions were substantially justified or harmless. *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.*, 297 F. Supp. 2d 463, 481 (N.D. N.Y. 2003); *Stallworth v. E-Z Serve Convenience Stores,* 199 F.R.D. 366, 368 (M.D. Ala. 2001). In deciding upon the propriety of excluding expert testimony in a given case, the court must consider

four separate factors: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witness' testimony." *Browning v. City of Balch Springs*, 1997 WL 361632, *4 (N.D. Tex. June 20, 1997)(unpublished).

Even though the Federal Rules of Civil Procedure provide for supplementation, parties do not have infinite time to supplement their expert opinions with new information to respond to challenges to their experts' original evidence. Courts have stricken affidavits to the extent they go beyond opinions expressed in the experts' Rule 26 reports. *See, e.g., Beasley v. U.S. Welding Svc., Inc.*, 129 Fed. Appx. 901, 902 (5th Cir. 2005)(unpublished)(affirming exclusion of expert testimony where plaintiff "offer[ed] no reasonable explanation for failing to provide the expert report timely"); *Browning v. City of Balch Springs*, 1997 WL 361632, *4 (N.D. Tex. June 20, 1997)(unpublished).

In this case, Plaintiffs do not demonstrate "substantial justification" why the revisions and new affidavits were filed after the expert report deadline, after the expert discovery deadline, after *Daubert* and summary judgment motions were filed, and less than a week from the *Daubert* hearings. Instead, Plaintiffs state they wanted to streamline the *Daubert* hearings by offering affidavits in lieu of live testimony, and they are entitled to rebut Defendant's erroneous arguments. Plaintiffs maintain this procedure has been utilized by former Magistrate Judge Harry McKee in a case pending before District Judge David Folsom. *See Homer Abron, Jr., et al. v. Dean Lumber Co., Inc., et al.*, Cause No. 2:99-CV-197 (Docket Entry # 360). However, as noted by Defendant, in *Abron* the parties had agreed to the procedure in advance of the *Daubert* hearing.

Here, Defendant does not object to Plaintiffs' *Daubert* affidavits to the extent they are simply a regurgitation of their Rule 26 expert reports. However, Defendant does object to the introduction

of new materials, new information, and new opinions. The Court agrees with Defendant that allowing the introduction of *new* information at this time for use in the Court's consideration of the parties' *Daubert* motions would be unfair and prejudicial to Defendant because Defendant would not have an opportunity for cross-examination on those new issues. Although Plaintiffs assert the affidavits at issue are not "wholly new reports," certainly portions of the affidavits present new information, and the Court is not required nor is it willing to parse out those portions of the affidavits that are new and those portions that were timely disclosed or proper as rebuttal or impeachment evidence only. Defendant's motion is granted. To the extent the subjects in these affidavits is new, the Court is not addressing at this time whether Plaintiffs are entitled to present at trial live testimony on the new information as rebuttal or impeachment evidence.

Based on the foregoing, it is hereby

**ORDERED** that KMC's Motion to Strike New and Untimely Affidavits of Frank H. Gardner, J. Routt Reigart, Tumulesh K. Solanky, and Paul H. Templet (Docket Entry # 771) is in all things **GRANTED**. It is further

**ORDERED** that the untimely affidavits/reports and all exhibits of Frank H. Gardner, M.D., J. Routt Reigart, M.D., FAAP, Tumulesh K. S. Solanky, Ph.D, and Dr. Paul H. Templet are hereby **STRICKEN**.

**SIGNED this 30th day of November, 2006.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE